JOHN ROCHE *vs.* FREDERICK P. LADD & another.
SAME *vs.* SAME.

In an action upon a promissory note given for the premium upon a policy of insurance issued to a citizen of this commonwealth by a foreign insurance company, which has not complied with the requisitions of *St.* 1856, c. 252, concerning such companies, proof that the president of the company was at the office of the agent in Boston soliciting business; that the defendants were invited by the agent to go there to meet him; that, upon a subsequent application for insurance by them, the agent suggested the company in which it should be effected; that he had in his office a sign bearing upon it the name of the company; that he informed applicants what the rates of insurance would be; that applications were forwarded and policies received in return through him; that premium notes were sent to him in blank, and were executed in his office when policies were delivered; and that he was paid for all his services by the company; is sufficient to authorize the jury to find a violation of the statute, in making the insurance by an agent in this commonwealth, and that the note given for the premium was therefore invalid, although the agent testifies that he did not consider himself as the agent of the company and that he was not their agent.

A note which would be invalid if in the hands of the payee, is invalid in the hands of an

indorsee who received it as collateral security for a debt which has been paid since the commencement of his action upon it.

A note given for the premium upon a policy of insurance issued in violation of *St.* 1856, *c.* 252, concerning insurance companies is invalid.

A general verdict of a jury will not be set aside on account of a special finding by them, in reply to a question of the court, if it does not in terms qualify their general verdict, and if it appears from the bill of exceptions that it was erroneously recorded, through misapprehension.

Two actions of contract on promissory notes, both payable in twelve months after date to the order of the Western Insurance Company, and indorsed to the plaintiff. The cases were tried and argued together.

At the trial in the superior court, it appeared that the notes were given for premiums on two policies of insurance issued to the defendants by the Western Insurance Company, of Philadelphia; that this company had not complied with the requisitions of the statutes concerning foreign insurance companies, and that the defendants were citizens of Massachusetts.

In respect to the manner in which the insurances were effected, John G. Hall, one of the defendants, testified that he procured the policies, which he produced, of Oliver Brewster, at his office in Boston; that, when received, they bore upon them the words, which still appeared thereon, " Oliver Brewster, Insurance, No. 4 State street, Boston "; that he had known Brewster as engaged in the insurance business for many years; that he made application to him for the insurance; that Brewster then had several insurance signs in his office, among which was one of the Western Insurance Company, Philadelphia; that the defendants did not employ Brewster as their agent, or pay him anything for commissions or services; that, when the application was made, Brewster said he would put a certain sum in the Western Insurance Company, and certain sums in other offices, and represented that the standing of that company was good; and that, in a few days, he sent to him the policies. The witness further testified that, before the above transaction, Brewster sent to the defendants, requesting them to meet the president of that company at his office, and the witness went, and met a Mr. Norris, who was introduced as the president of the com

pany, and who stated that the company was in good standing, and had a capital of $50,000, and desired the witness to give them his business.

Oliver Brewster testified that his business was that of an insurance agent; that the policies produced were procured through him; that he received the applications and forwarded them to the company; that they were returned to him executed, with the premium notes in blank; that the notes were filled out and signed in his office; and that he had procured other policies of this company for citizens of Boston, to the number, perhaps, of fifty. Upon cross-examination, he further testified that his manner of doing business for the company was as follows: he forwarded applications, and, if the company accepted the risks, they returned policies executed, with blank premium notes, which were signed and returned by him to the company, and the policies were delivered. The witness was asked by the plaintiff if he was an agent of the company, and replied that he had no power of attorney from them; and, upon being further pressed, said that he did not consider himself as their agent, and that he was not their agent; that he sent them business, which was transacted by correspondence, and that he had nothing to do with the acceptance or refusal of risks, or the rates of premium, or the conditions and terms of the policies, and had no authority to make any change in them; that he used no discretion of his own in the matter; that he did not examine risks, but that this was done by a marine inspector; that, whenever he had done anything in cases of loss, the average was made up by an adjuster, and forwarded by him to the company; that he generally informed applicants what the rate of premium would be; and that he received from the company a commission of five per cent. on the premiums passing through his hands, but no compensation from the applicants.

There was also testimony as to the circumstances under which the notes were indorsed to the plaintiff, not necessary to be reported.

The plaintiff requested the court to instruct the jury that, if the notes were indorsed by the company to him, before ma-

turity, as collateral security, the defence that the consideration was illegal would not be open to the defendants, even though the debt for which they were pledged had been paid since the commencement of the suits ; and that, if this defence was open, yet the facts testified to did not constitute a violation of *St.* 1856, *c.* 252, or render the notes invalid.

But *Allen,* C. J., declined so to rule, and instructed the jury that, if the notes were indorsed to the plaintiff before their maturity, *bonâ fide,* for a good consideration, and were now so held by the plaintiff, the defence would not be open that they were originally given in contravention of the statute concerning foreign insurance companies, and it would be their duty to return a verdict for the plaintiff; but, if the notes were indorsed without consideration, or as collateral security for a debt which was afterwards paid, then they should inquire further, whether the company did the business out of which the notes arose, within this commonwealth and in contravention of the statute, and the burden of proof of this was upon the defendants; that it would not be a violation of the statute to issue policies to citizens of this commonwealth who should apply directly or indirectly to the office, provided the business was not done within this commonwealth ; as, for instance, to receive applications and return policies by express ; but, if Brewster in this transaction was doing business as agent for the company in this commonwealth, and they had not complied with the requisitions of the statute, and the indorsement of the notes to the plaintiff was without consideration, or as collateral security for a debt which was afterwards paid, they should return a general verdict for the defendants.

The court requested the jury, in case they should find for the defendants, to be prepared to answer the following questions 1. Was there any consideration for the indorsement of the notes to the plaintiffs ? 2. Was Brewster doing business in this commonwealth, as agent of the company, in violation of the statute concerning foreign insurance companies, as explained to them by the court ?

The jury returned a verdict for the defendants, and replied to

the first question put to them in the negative, and to the second in the affirmative; but, through misapprehension, the answer to the second question was recorded in the negative; and the plaintiff moved for a new trial, because of uncertainty in the verdict; but the court overruled the motion.

*E. F. Hodges & C. F. Simmons,* for the plaintiff.

*W. L. Burt,* ( *C. S. Lincoln* with him,) for the defendants.

HOAR, J. These are actions to recover the amount of two promissory notes given for premiums of insurance, payable to the order of the Western Insurance Company of Philadelphia, and indorsed to the plaintiff. The defence at the trial was, that the Western Insurance Company were doing business in this commonwealth through an agent, in violation of law, not having complied with the requirements of *St.* 1856, *c.* 252. Whether the insurance for which the notes were given was effected through an agent in this commonwealth, and with citizens of this commonwealth, and whether the plaintiff was a *bonâ fide* holder of the notes, having taken them before they were due for a valuable consideration, or whether they were indorsed to him without consideration, or for a consideration which had failed, were questions which were submitted to the jury, under instructions which seem to us to have been entirely correct.

The plaintiff now objects that the facts proved at the trial did not, as a matter of law, constitute a violation of the provisions of the statute of 1856, which would make the notes invalid · and that the jury should have been so instructed. The manifest object of the statute is to protect the citizens of this commonwealth against fraudulent or worthless contracts of insurance, made by dishonest, irresponsible or litigious corporations, not amenable to its laws or under the control of its legislature, and to prohibit such contracts from being made by agents within the commonwealth, except under conditions which shall furnish the security to be derived from an annual return of the condition and business of the company, with the appointment of a known agent, whose powers shall be precisely defined, and upon whom process may be served. As the Western Insur-

ance Company was not incorporated by the legislature of Massachusetts, and had not complied with the conditions imposed by the statute, the only question of fact in issue was, whether the policies were issued through an agent resident here, within the meaning of the statute. And we think the evidence upon this point was sufficient for the consideration of the jury, and might warrant the inference which they have drawn from it. The facts that the president of the insurance company was at the office of the agent soliciting business; that the defendants were invited by the agent to go there to meet him; that the application for insurance was made by the defendants to the agent, and that he suggested the company with which it should be effected; that he had the sign bearing the name of the company put up in his office; that he informed applicants what the rates of insurance would be; that he received and forwarded applications, and received and returned policies; that he was paid for all his services by the company; and that the notes for the premium were sent to him in blank, and filled up and executed in his office when the policies were delivered; all tended to show that he was not a mere agent to receive and forward papers, but was an agent employed to solicit and procure business for the insurance company, and to transact it for them within this commonwealth.

The next ground of exception is to the refusal of the court to rule that, if the notes were invalid in the hands of the company, the plaintiff might still recover upon them, although he took them without consideration, or upon a consideration which had failed. But the payee of the notes could maintain no action upon them, because they were contracts made for their benefit by an agent, who was prohibited by law from making them. Although the statute makes the contract of insurance valid for the protection of the insured, it expressly provides that the company making the insurance shall not recover any premium or assessment upon it. If the plaintiff took the notes without consideration, or as collateral security for a debt which had been paid, he could have no greater rights under the contract than

those of the payee. *Williams* v. *Cheney,* 3 Gray, 215. To entitle himself to any higher protection, he must show that he took the notes before they were due, for a valuable consideration, and without notice of the illegality which attached to them. The insurance company could not recover for their own benefit, indirectly, through a mere indorsement, a debt upon which they could not sue directly.

It is further contended that a note given for a premium is not to be considered as a premium. The *St.* of 1856, *c.* 252, § 54, in terms provided that " all payments made for policies, whether in money or note, shall be taken and deemed as premiums." But this clause was repealed by *St.* 1857, *c.* 259. If, therefore, the defence depended upon this express provision of the statute of 1856, it would not be applicable to the second note, which was made after the statute of 1857 took effect. But we do not think the clause above recited had any reference to the previous enactment in the same statute that no premium should be recovered by a company that had not complied with the requirements of the law. A promise to pay a premium, which it was illegal for the company to receive, cannot be enforced, upon general and well settled principles of law, without a special recital to that effect in the statute. *Miller* v. *Post, ante,* 434. The action upon either of these notes, whether brought in the name of the insurance company, the payee, or in the name of an indorsee who has no interest in the note, and brings it for the benefit of the company, is in substance and effect an action to recover a premium of insurance; and, as such, it cannot be maintained.

The objection that the special finding of the jury, as it was put in writing at the trial, is uncertain and obscure, cannot avail the plaintiff. The verdict was a general one for the defendants, and it was rendered under proper instructions, and authorized by the evidence. The special finding does not in terms contain anything which qualifies its effect; and the bill of exceptions shows that it was put into the form in which it now appears through misapprehension and mistake, and does not show the

real response of the jury to the specific interrogatories put to tnem by the court. *Exceptions overruled.**

---

\* A similar decision was made at the same term.

### WILLIAM DRINKHOUSE *vs.* LOUIS A. SURETTE & another.

CONTRACT on a promissory note payable twelve months after date to the order of the Western Insurance Company, and indorsed to the plaintiff. At the trial in the superior court, before *Allen*, C. J., the facts appearing in evidence were in general quite similar to those in *Roche* v. *Ladd*, and, under similar instructions to the jury, a verdict was returned for the defendants. The plaintiff alleged exceptions.

*C. F. Simmons*, for the plaintiff.

*J. D. Ball*, for the defendants, was not called upon.

HOAR, J. All the points raised in this case have been substantially settled in the case of *Roche* v. *Ladd*.

It was held in *Williams* v. *Cheney*, 3 Gray, 215, that a party to whom notes, on which the payee could not maintain an action, are indorsed, without notice, in trust as collateral security for the payment of certain debts of the payee, can recover in a suit upon the notes only the amount of the sums actually due from the payee upon those debts.

The debt for which the plaintiff held this note as collateral security was fully paid after the commencement of the action, and he could therefore prosecute it further only in trust for the payee. After the payment, his interest as a *bonâ fide* holder for a valuable consideration was extinguished, and he no longer possessed any greater rights than the payee of the note.

*Exceptions overruled*